IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ENRIQUE RAMOS SANTIAGO, et al.<br>Plaintiffs | |
| v. | |
| WELLCRAFT MARINE CORP.<br>Defendant / Third-Party Plaintiff | Civil No. 97-1856(SEC) |
| v. | |
| FELIPE RIVERA CRESPO, et al.<br>Third-Party Defendants / Counter-<br>claimants / Fourth-Party Plaintiffs | |
| v. | |
| MARINE CENTER<br>OF THE CARIBBEAN, INC.<br>Fourth-Party Defendants | |



## OPINION AND ORDER

This action stems from an accident in which plaintiff Enrique Ramos Santiago was injured due to the alleged defects in the hull of a Wellcraft motor boat. (**Docket # 1**). Defendant Wellcraft Marine Corp. (hereinafter "Wellcraft") claimed against the owner and operator of the boat, Felipe Rivera Crespo, his wife and their conjugal partnership, as a third-party defendants, (**Docket # 5**), who in turn counterclaimed against Wellcraft, (**Docket # 9**). Wellcraft subsequently moved for partial summary judgment on Rivera Crespo's counterclaim. (**Docket # 26**). Rivera Crespo opposed (**Docket # 31**), and Wellcraft subsequently replied (**Docket # 33**). For the reasons set forth below, Wellcraft's motion for partial summary judgment (**Docket # 26**) is denied.

**Summary Judgment Standard**

A district court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

**Civil No. 97-1856(SEC)**                                                                 2

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Summary judgment is appropriate only if the evidence taken in th[e] light [most favorable to the non-moving party] 'fails to yield a trial worthy issue as to some material fact.'" Zambrana-Marrero v. Suárez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999).

**Background**

The following facts are not disputed by the parties. On June 2, 1995, Felipe Rivera Crespo (hereinafter "Rivera") purchased a 1993 M/V Wellcraft Nova Spider 23', Hull No. WELP7709J293 (hereinafter the "boat"), at Marine Center of the Caribbean, Inc. (hereinafter "Marine Center"). Upon purchasing the boat, Rivera received a warranty registration card from Wellcraft, as well as a document setting forth the steps necessary to validate the Wellcraft warranty. These documents require that any warranty claim to Wellcraft be made "in writing to [an authorized] Wellcraft dealer within a reasonable period of time after discovery of any claimed defect . . . ." **(Docket # 26, Exhibits B and D).**

On June 29, 1996, Rivera was operating the boat near the southern coast of Puerto Rico. For reasons strongly disputed by the parties, the hull and deck joint of the boat failed and broke. During this occurrence, plaintiff Enrique Ramos Santiago, who was a passenger at the time, was injured. Rivera Crespo did not suffer any <u>physical</u> injuries. In his counterclaim, however, Rivera Crespo avers that he "has suffered and will continue to suffer mental anguish as a result of being out at sea in the [boat] when the hull and deck broke, resulting in the accident that caused severe and permanent bodily injury to [Ramos Santiago]." **(Docket # 9, at ¶ 10).**

A week after the accident, Rivera went to Marine Center and made an oral warranty claim. Marine Center in turn relayed this claim to Wellcraft. On July 17, 1996, Wellcraft rejected Marine Center's claim on behalf of Rivera. On February 19, 1997, Rivera's attorney sent a written warranty

**Civil No. 97-1856(SEC)**                                                                                                      3

claim to Wellcraft.[1] On March 5, 1997, Marcia M. Kull, Assistant General Counsel for Litigation at Genmar Holdings, Inc.[2] (hereinafter "Genmar") sent a letter to Rivera's counsel stating as follows:

> May this letter acknowledge receipt of your letter dated February 19, 1997, pertaining to Mr. Rivera-Crespo's 1993 Wellcraft Nova Spider boat.
>
> **I have commenced an investigation into your claims, and will report back to you** by March 31, with my recommendations.
>
> Please feel free to call me with any questions. I would appreciate your patience in the interim.

(Letter from Marcia M. Kull, Assistant General Counsel-Litigation, Genmar Holdings, Inc. to Benjamín Acosta, Jr., Esq. (Mar. 5, 1997)) (emphasis added). This letter was followed by another one dated March 14, 1997, in which Kull informs Rivera Crespo's counsel:

> In connection with our investigation into your client's claims, **we would like the opportunity for a marine surveyor inspect the boat on our behalf.** Please

---

[1] In this communication, Rivera Crespo's counsel stated, in part relevant:

Our firm has been retained to represent Mr. Felipe Rivera-Crespo and we have been requested to follow-up on his warranty claim in connection with a 1993 NOVA SPIDER, Hull Serial No. WELP7709J293, manufactured by Wellcraft Marine and sold to Mr. Rivera-Crespo by Marine Center of the Caribbean, Inc. of San Juan, Puerto Rico.

As more fully appears from the damages survey report, this vessel was acquired by Mr. Rivera-Crespo on June 2, 1995, and the hull is a total loss as a result of manufacturing defect that became apparent on June 29, 1996. . . .

(Letter from Benjamín Acosta, Jr., Esq. to Wellcraft Marine and Genmar Industries, Inc. (Feb. 19, 1997)).

[2] The record does not reveal whether Genmar has any relationship with Wellcraft Marine Corp. However, Wellcraft does not dispute that Genmar was acting on its behalf. To the contrary, in referring to a subsequent letter sent by Genmar to Rivera's counsel, Wellcraft has no trouble identifying itself as the sender. (Wellcraft's Statement of Uncontested Material Facts, at ¶ 8). Therefore, the Court shall assume, for present purposes, that Genmar was acting on Wellcraft's behalf.

> respond at your earliest convenience whether you will permit access to the boat by surveyor absent a court order.
>
> Also, **I would appreciate additional information regarding the incident**. This information would include, but not be limited to, official accident reports, identification of witnesses, witness statements, weather reports, etc. Sharing this information, which is discoverable in litigation, now will allow us to promptly evaluate your client's claim in a manner which is cost-effective for both of us.
>
> Thank you for your on-going cooperation. I look forward to hearing from you.

(Letter from Marcia M. Kull, Assistant General Counsel-Litigation, Genmar Holdings, Inc. to Benjamín Acosta, Jr., Esq. (March 14, 1997)) (emphasis added). On April 8, 1997, Kull sent yet a third letter to Rivera Crespo's attorney informing:

> **We have retained Captain John Lipuscek, Marine Consultants, Inc., San Juan, Puerto Rico to conduct a survey on your client's boat. I have asked him to contact you directly for an inspection date.**
>
> You note that you are unable to provide the information we requested at this time. Does your statement mean that you have no such documents, or that you decline to share them at this time?

(Letter from Marcia M. Kull, Assistant General Counsel-Litigation, Genmar Holdings, Inc. to Ms. María Victoria Munera-Pascual (April 8, 1997)) (emphasis added).

On May 21, 1997, Rivera Crespo, his wife and their conjugal partnership filed suit against Wellcraft and others in the Puerto Rico Court of First Instance, Guayama Part. In that complaint, Rivera claimed that the accident "was due solely and exclusively to the fact that [the] vessel was badly designed and badly manufactured by its manufacturer, Genmar Holdings, Inc., and/or Wellcraft Marine Corp." (**Docket # 26**, Exhibit K, at ¶ 11). The complaint further alleged that "[t]he manufacture and design of [the] vessel was the proximate cause of the vessel's becoming destroyed and unusable." (**Id.** at ¶ 13). Rivera Crespo also averred to have "suffered mental anguish when the vessel's hull broke, while he was driving said vessel in open sea, leaving the vessel totally unusable

**Civil No. 97-1856(SEC)**                                                                                              5

. . . ." (**Id.** at ¶ 15). On June 4, 1997, Ramos Santiago and others filed the instant complaint. (**Docket # 1**). On October 15, 1997, Wellcraft brought Rivera Crespo into this action as a third-party. Thereupon, on February 2, 1998, Wellcraft and Rivera Crespo stipulated the dismissal of the state-court action. (**Docket # 26**, Exhibit M). Rivera Crespo subsequently counterclaimed against Wellcraft in this Court (**Docket # 9**). The instant motion followed.

Wellcraft seeks summary judgment on Rivera Crespo's counterclaim for time-bar. According to Wellcraft, Rivera Crespo's action is one under articles 1373-1375 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit 31, §§ 3841, 3842 (1990), for breach of implied warranty due to hidden defects. Because Rivera Crespo did not make a warranty claim to Wellcraft <u>in writing</u>, as required under Wellcraft's standard warranty on its boats, within the 6-month statute of limitations set forth in article 1379 applicable to breach of warranty claims for hidden defects under Puerto Rico law, see id. § 3847, Wellcraft argues that Rivera Crespo's counterclaim is time-barred.

On his part, Rivera Crespo contends that his counterclaim sounds in tort, not in contract, and thus the applicable limitations period is the 1-year statute of limitations provided in article 1686 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, § 5298 (1990). Under this theory, Rivera Crespo's counterclaim would not be time-barred, because he filed his counterclaim in this action while his state-court complaint, which was filed within a year from the date of the accident, was still pending. See id. § 5303 (providing that prescription may be interrupted by the institution of an action "before the Courts."). In the alternative, Rivera Crespo argues that, even assuming that his claim is one for breach of implied warranty for hidden defects, he filed his state-court complaint within the 6-month applicable statute of limitations, as it has been interpreted by the courts.

Wellcraft counters by arguing that Rivera Crespo may not circumvent the 6-month statute of limitations for breach of implied warranty due to hidden defects by merely labeling his complaint

as one for strict products liability or negligence. According to Wellcraft, Puerto Rico's tort statute does not apply when the source of the obligation is contractual. Because Rivera Crespo's complaint is based on Wellcraft's warranty, article 1802 of the Civil Code of Puerto Rico is inapplicable. Wellcraft contends, moreover, that the fact that Rivera Crespo did not suffer any <u>physical</u> injuries takes his claim out of the realm of strict liability.

**Applicable Law/Analysis**

In his counterclaim, Rivera Crespo alleges that "the hull and deck joint of the [boat] failed and broke due to poor caulking and bonding procedures on the hull . . .," and that this "manufacture design . . . was the proximate cause of the accident . . ." (**Docket # 9**, at ¶ 6, 8). More elaborately, Rivera Crespo contends that "[t]he accident and damages . . . were caused by [Wellcraft's] failure to warn of the hazardous and dangerous condition of the subject vessel; [Wellcraft's] failure to provide adequate instructions for the safe use of the [boat]; [Wellcraft's] negligent misrepresentation that the [boat] was safe, fit and proper for its intended use and purpose; and the manufacturing and/or design defects of the [boat]." (**Id.** at ¶ 12). He claims that he "has suffered and will continue to suffer mental anguish as a result of being out at sea in the [boat] when the hull and deck broke, resulting in the accident that caused severe and permanent bodily injury to [Ramos Santiago]." (**Docket # 9**, at ¶ 10). Rivera Crespo also claims that he, his wife and their conjugal partnership have suffered property losses that exceed $35,000.00,[3] and that his wife has suffered and will continue to suffer mental anguish in an amount exceeding $50,000.00 (**Id.** at ¶¶ 9, 11). These allegations are

---

[3] In his counterclaim in this Court, Rivera Crespo does not identify the damaged "property." However, by looking at his state-court complaint, one can easily infer that such "property" refers to the value of the boat and the cost of removing and transporting it, plus the cost of having to maintain it in storage while inoperative. (**Docket # 26**, Exhibit K, at ¶ 14). The Court notes, moreover, that the value of Rivera Crespo's and his wife's mental anguish has doubled since the state-court complaint was filed. (**Id.** at ¶¶ 15, 16).

**Civil No. 97-1856(SEC)** 7

essentially the same allegations contained in Rivera Crespo's state-court complaint. (**Docket # 26, Exhibit K, at ¶¶ 11-13, 17-18**).

It is beyond dispute that damages caused by a defective product may give rise to a claims both for breach of implied warranty and strict products liability. See Mendoza v. Cervecería Corona, Inc., 97 P.R. Dec. 499 (1969); Castro v. Payco, Inc., 75 P.R. Dec. 63 (1953); 2 Herminio M. Brau del Toro, Los Daños y Perjuicios Extracontractuales en Puerto Rico § 16.01, at 882 (1986). In certain circumstances, a plaintiff may elect which claim to pursue. See González v. Centex Construction Co., 103 P.R Dec. 82, 85-86 (1974); Márquez v. Torres Campos, 111 P.R. Dec. 854 (1982); Ramos v. Orientalist Rattan Furniture, Inc., 130 P.R. Dec. 712, 727 (1992); In re Dupont-Benlate Litigation, 977 F. Supp. 779, 786 (D.P.R. 1995). Wellcraft contends that, in this case, Rivera Crespo may not frame his action as one for negligence or strict products liability. Wellcraft bases this contention primarily on Betancourt v. W.D. Schock, 907 F.2d 1251 (1st Cir. 1990).

In Betancourt, the plaintiff bought a sailboat which he later found to have a serious defect. He sued the manufacturer both in tort and in contract, seeking damages representing his investment in the boat, his monthly upkeep of the boat while it was inoperative, and his mental anguish for not having a boat that would work. The district court concluded that the applicable statute of limitations was the 6-month period governing suits for breach of statutorily imposed warranty against hidden defects. Because the plaintiff did not bring suit within this period, the district court dismissed his action as time-barred. On appeal, the First Circuit affirmed. The circuit court concluded, *inter alia*, that the plaintiff's case did not come within the exception created by the Supreme Court of Puerto Rico in Márquez regarding a plaintiff's prerogative to choose between a general and a special cause of action, and that the plaintiff could not assert an action in tort because article 1802 of the Civil Code of Puerto Rico does not apply in a contractual context. See Betancourt, 907 F.2d at 1254-55.


**Civil No. 97-1856(SEC)**                                                                                         8

The court also reinforced its conclusion that the plaintiff's claim was essentially one for breach of warranty by quoting from <u>East River S.S. Corp. v. Transamerica Delaval, Inc.</u>, 476 U.S. 858, 870-72 (1986), for the proposition that a claim for damages to a defective product itself is not cognizable in strict liability.

The Court finds, however, that both the facts and the issues in this case are distinguishable from those involved in <u>Márquez</u> and <u>Betancourt</u>. <u>Márquez</u> involved an action stemming from the sale of certain cattle sick with tuberculosis. The defendant's farm had been placed in quarantine upon the discovery of tuberculosis. Disregarding the ban, the defendant sold various head of cattle to the plaintiff. The plaintiff alleged that the cattle from the defendant's farm contaminated his healthy cattle, thereby adversely affecting his business in diverse ways. The plaintiff framed his action as one for contractual deceit, while the defendant contended that it was one for breach of implied warranty due to hidden defects. At issue was whether under the circumstances both actions were incompatible. The Supreme Court of Puerto Rico explained that, generally:

> (1) from the facts of a case where an object with defects has been sold, the possibility may arise that the special warranty action for hidden defects and/or one or several actions of a general nature may be filed which are not incompatible per se; (2) the affected purchaser may choose to bring the action he deems more appropriate to protect his rights, provided he does not use the general action to evade applicable rules related to the special action that are incompatible with the provisions of the general action; (3) when elucidating, between two incompatible provisions, which one is applicable, the particular circumstances of the case and the rights claimed by the affected buyer should be examined in order to determine if the special rule is the applicable one and if it excludes the general one.

<u>Id.</u> at 869 (official translation quoted in <u>Betancourt</u>, 907 F.2d at 1254). The Court found that the plaintiff's claim arose

> not from the objective fact of the defect in the object of the contract [the cattle], which is what gives life to an action of warranty, but from a subjective circumstance provoked by the defendant's deceitful action which resulted in damages that go beyond the defect in the object of the contract and which is thus outside the frame of

the concept of warranty. As a question of fact, the problem did not actually arise from the defect of the cattle sold, which presumably were not all sick at the time of the sale, but as a result of the presence of the contagious germ in the herd to which they belonged.

Id. at 870-71 (official translation quoted in Kali Seafood, Inc. v. Howe Corp, 887 F.2d 7, 11 (1989)). The Court also took into consideration the fact that the defendant was well aware of the quarantine, as well as the existence of a public interest in preventing the sale of tubercular cattle. See id. at 867, 870. Under these circumstances, the Court concluded that the plaintiff's action was more accurately one for contractual deceit. Id. at 871.

Applying these principles, the circuit court in Betancourt found that the plaintiff's claim rested on "upon the 'objective' fact of a defect," and that "there [was] no evidence of a separate 'subjective . . . deceitful action.'" 907 F.2d at 1255. Furthermore, the damages sought by the plaintiff were not "significantly 'outside the frame of the concept of warranty,' which is to say, they are damages (a new boat, compensation for lost 'down time,' directly related 'suffering') a plaintiff might try to obtain in an action for breach of warranty . . . ." Id. Finally, the court determined that "the 'public interest' in preventing the sales of [defective] boats . . . is less than the interest in stopping the sale of tubercular cattle." Id.

Because actions for breach of implied warranty may be incompatible with actions either in negligence or strict products liability in that the applicable statutes of limitations differ (a 6-month period applies to the former whereas the latter are governed by a 1-year period) the Court in the case at bar must examine "the particular circumstances [involved] and the rights claimed by [Rivera Crespo] in order to determine if the special rule is the applicable one and if it excludes the general one." Márquez, 111 P.R. Dec. at 869 (official translation quoted in Betancourt, 907 F.2d at 1254). In this case, Rivera Crespo discovered the alleged defective condition of the boat when the accident

occurred. He seeks neither the rescission of the purchase and sale contract for the boat, nor a reduction in the price of the boat, both remedies which, aside from the recovery of the expenses directly related to a product's hidden defects (like, for example, repair costs), are the only remedies available in an action for breach of implied warranty. See P.R. Laws. Ann. tit. 31, § 3843 (1990).[4] Rivera Crespo specifically seeks damages which are significantly outside the frame of the concept of warranty: mental anguish suffered from being out at sea in a broken-down boat with a severely injured passenger on board. While Rivera Crespo is also seeking certain damages which do come within the scope of a warranty action (such as, apparently,[5] the price of the boat and other directly related economic loss), the fact remains that he is seeking compensation which is beyond the damage to the boat itself, a circumstance which takes his claim outside the realm of an implied warranty action. See East River S.S. Corp., 476 U.S. at 870-72. Rivera Crespo's claim stems not from "the objective fact of the [alleged] defect" in the boat, but from the damages caused by such defect. See Márquez, 111 P.R. Dec. at 869 (official translation quoted in Betancourt, 907 F.2d at 1255). Moreover, while "the 'public interest' in preventing the sales of [defective] . . . boats" may not be significant, Betancourt, 907 F.2d at 1255, the "public interest" in assuring that the costs of injuries stemming from defective boats "are borne by the manufacturers that put such [boats] on the market rather than by the injured persons who are powerless to protect themselves," Greenman v. Yuba

---

[4] This section provides, in relevant part, that in actions for breach of implied warranty due to hidden defects, a purchaser "may choose between withdrawing from the contract, the expenses which he may have incurred being returned to him, or demanding a proportional reduction of the price, according to the judgment of experts." P.R. Laws Ann. tit. 31, § 3843 (1990). A purchaser is not entitled to damages, unless the seller "knew of the faults or hidden defects in the thing sold and did not give notice thereof to the vendee . . . ." Id.

[5] See supra footnote 3.

AO 72A
(Rev. 8/82)

Civil No. 97-1856(SEC)                                                                                              11

Power Products, Inc., 59 Cal.2d. 57, 63 (1963), indeed is. As Judge Fusté in In re Dupont-Benlate Litigation, 877 F. Supp. 779, 787 (D.P.R. 1995) stated:

> In demanding that plaintiffs seek their remedy solely under the contractual implied warranty against hidden defects, defendant invites us to eviscerate the Puerto Rico doctrine of negligence and strict products liability . . ., forcing plaintiffs in privity to plead their causes of action and accept their remedies solely under the Civil Code purchase-and-sale provisions. We have neither the power nor the inclination to do so. Strange would indeed would be the doctrine that we would thereby create, granting less of a remedy to parties in privity than to those without privity to secure damages for injury from defective products.

Thus, under the circumstances, nothing prevents Rivera Crespo from proceeding on the theory of strict products liability. Wellcraft nevertheless protests that Rivera Crespo may not assert a claim for strict products liability because he did not suffer physical harm, as required under section 402A of the Restatement (Second) of Torts (1965). This section provides, in part relevant, that "[o]ne who sells any product in a defective condition unreasonably dangerous condition to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property . . . ." Restatement (Second) of Torts § 402A (1965). Moreover, section 7(3) of the Restatement defines the concept of "physical harm" as "the physical impairment of the human body, or of land or chattels." Comment e to this section more precisely explains that "[t]he words 'physical harm' are used to denote physical impairment of the human body, or of tangible property, which is to say land or chattels. Where the harm is impairment of the body, it is called 'bodily harm,'" as to which a cross-reference is made to section 15, which in turn defines "bodily harm" as "any physical impairment of the condition of another's body, or physical pain or illness." Comment b to section 15 clarifies that "[t]he minute disturbance of the nerve centers caused by fear, shock or other emotions does not constitute bodily harm. It may, however, result in some appreciable illness or have some other effect upon the physical condition of the body which

constitutes bodily harm." Thus, exceptionally, physical harm may result from emotional distress caused by more than passing fear, shock or other similar emotions.

Now, whether <u>physical</u> harm in the sense expressed in the Restatement is required for a strict products liability claim under Puerto Rican law is an issue which the Supreme Court of Puerto Rico has not had the opportunity to address. While the Supreme Court of Puerto Rico "generally embraces the principles of strict products liability prescribed in the Restatement (Second) of Torts § 402A (1965)," it also "has consistently relied upon California Supreme Court precedent when confronting issues raised by the doctrine of strict products liability." <u>Acosta-Mestre v. Hilton Int'l of Puerto Rico</u>, 156 F.3d 49, 54, 55 (1st Cir. 1998). Indeed, the Supreme Court of Puerto Rico has specifically followed its Californian counterpart in rejecting § 402A's requirement that the product be found "unreasonably dangerous" in order to impose liability. <u>See</u> <u>Montero Saldaña v. American Motors Corp.</u>, 107 P.R. Dec. 452, 461-62 (1978) (following California's <u>Cronin v. J.B.E. Olson Corp.</u>, 501 P.2d 1153 (1972)). Rivera Crespo does not cite, and the Court has not found, any case from the Supreme Court of California specifically addressing this issue. The Court notes, however, that California's Fifth District Court of Appeal has held that "where . . . [a plaintiff is] using a defective product for the purpose and in the manner intended and the product causes injury to another because of the defect, the [plaintiff/]user[] may state a cause of action for emotional trauma . . . sustain[ed] through sensory perception of the injury thus inflicted." <u>Kately v. Wilkinson</u>, 148 Cal. App. 3d 576, 580 (1984).

<u>Kately</u> involved claims by a mother and a daughter who witnessed the accident and death of the daughter's best friend during the operation of a defective boat. Kately, the mother, was operating the boat while her daughter's best friend, Rhonda, was being towed as a skier. The boat malfunctioned, making steering it impossible. The boat struck Rhonda causing her severe injuries

AO 72A
(Rev. 8/82)

(partial dismemberment of one leg, deep lacerations and partial evisceration of the abdomen). While rescuing Rhonda from the water, Kately and her daughter came in direct contact with her wounds. Moreover, they were compelled to sit with Rhonda in her mutilated condition as the boat kept circling in the water. Rhonda eventually died. In finding that Kately and her daughter could recover for her emotional damages under a theory of strict liability, the appellate court explained:

> [W]e believe that [the manufacturer and the seller of the boat] should reasonably have foreseen that Kately, as the purchaser and operator of the defective boat, would suffer emotional distress when the boat malfunctioned and killed or injured another human being. Such distress is foreseeable regardless of the relationship between the plaintiff/operator of the boat and the victim. It is clearly predictable that the user of a defective product will feel guilt and responsibility for the injury or death of another notwithstanding that the actual cause was the malfunction of the product he was using. Such feelings of guilt and responsibility are foreseeably an integral part of resultant emotional distress and suffering caused by the product malfunction. This is not a type of emotional harm which people should be expected to absorb for their own good and that of society. The guarantee of the genuineness of Kately's emotional distress lies in the circumstances of the case. The user of a defective product is not a mere bystander but a primary and direct victim of the product defect; this is true whether the defective product directly and immediately injures the user or severely harms another while being operated by the user; it is equally true whether the user suffers physical or emotional injuries."

Id. at 587-88.

This Court would not feel comfortable predicting that the Supreme Court of Puerto Rico would rule that a strict products liability plaintiff cannot, under any circumstances, recover damages for emotional distress on the basis of the physical harm requirement of the Restatement (Second) of Tort's § 402A. The doctrine of strict products liability was created by the Supreme Court of Puerto Rico under the aegis of article 1802 of the Civil Code (Puerto Rico's general tort statute). See Mendoza v. Cervecería Corona, Inc., 97 P.R. Dec. 499 (1969). Accordingly, the broad concept of injury applicable in negligence or fault cases under article 1802 is also applicable in strict products liability cases: "Injury is any material or moral loss suffered by a person, either in his or her property

**Civil No. 97-1856(SEC)** 14

or patrimony, caused by the violation of a juridical norm for which another person is liable." Cintrón Adorno v. Gómez, 99 T.S.P.R. 18, 1999 WL 202903, at *15 (citation and internal quotation marks omitted) (translation ours). Therefore, while there is no California Supreme Court precedent squarely addressing the issue presented in this case, the Court thinks that it is relatively clear[6] that the Supreme Court of Puerto, on the rationale of Kately, would allow recovery of damages for emotional distress under a theory of strict liability when such distress was caused directly as a result of the plaintiff's use or operation of a defective product which injures or kills another person.

Of course, should Rivera Crespo wish to continue to pursue his claim under a strict liability theory, any claim for the value of the boat and directly related economic loss would be precluded. See, e.g., Seely v. White Motor Co., 403 P.2d 145, 149 (1965).[7] Moreover, because Rivera Crespo's wife, as it could be inferred from the complaint, was not a passenger in the boat during the accident, her claim for emotional distress should be barred.

We note, nevertheless, that Rivera Crespo need not premise its claim on strict liability; he may simply seek redress against Wellcraft on the theory of negligence. See Jiminez v. Sears, Roebuck & Co., 482 P.2d 681, 686 (1971) (stating that "No valid reason appears to require a plaintiff to elect whether to proceed on the theory of strict liability or on the theory of negligence."); Restatement (Second) of Torts § 402A, comment *a* ("The rule stated here is not exclusive, and does not preclude liability based upon the alternative ground of negligence . . . ."). Of course, under this theory, Rivera Crespo would have to prove that the defect in the boat was due to Wellcraft's

---

[6] See Acosta-Mestre v. Hilton Int'l of Puerto Rico, 156 F.3d 49, 54 (1st Cir. 1998) (when there is no controlling state court precedent, a federal court sitting in diversity may either certify a state law issue to the state's highest tribunal, or undertake its prediction when the course that such court would follow is relatively clear).

[7] For the same reason, the conjugal partnership's claim would also be barred.

negligence. The claims presented for property loss, as well as Rivera Crespo's wife's and their conjugal partnership's claims would not be barred under this theory.

Finally, Wellcraft's argument that article 1802 does not apply in a contractual scenario is inapposite as premised on Betancourt. After the First Circuit's decision in Betancourt, the Supreme Court of Puerto Rico decided Ramos v. Orientalist Rattan Furniture, Inc., 130 P.R. Dec. 712 (1992). In Ramos, the Court held that a plaintiff may elect to proceed either in contract or in negligence under article 1802, if the injury claimed constituted both a breach of the general duty not to cause harm to others and a breach of contract. See id. at 727. Under Puerto Rico law, claims for breach of implied warranty due to hidden defects are contractual in nature, as such warranty is read into every purchase and sale contract, absent a contrary stipulation. See P.R. Laws Ann. tit. 31, § 3842 (1990). Such is the situation in this case. Accordingly, nothing precludes Rivera Crespo from electing under which theory to proceed.

Alternatively, the Court finds that even if construed as claim for breach of implied warranty, Rivera Crespo's action is not time-barred. While it is true that more than six months elapsed between Wellcraft's rejection of Marine's claim on behalf of Rivera Crespo and Rivera Crespo's attorney's written claim to Wellcraft, the communications which subsequently ensued between Wellcraft and Rivera Crespo's attorney lead us to conclude that Wellcraft should be estopped from raising statute of limitations as a defense.

It is settled that the 6-month period applicable to breach of implied warranty claims runs "from the day the steps to come to an understanding following the contract were interrupted." Ferrer v. General Motors Corp., 100 P.R.R. 244, 254 (1971). In this case, Wellcraft could have simply rejected Rivera Crespo's attorney's initial written claim on the basis that it was late. Instead, it represented, among other things, that it had "commenced an investigation into [the] claim, and would

Civil No. 97-1856(SEC)   16

report back . . .;"[8] that it "would like the opportunity for a marine surveyor to inspect the boat . . .;"[9] and that it had already retained a marine surveyor to conduct such inspection.[10] All of these representations certainly would have given Rivera Crespo the impression that Wellcraft was taking his claim into consideration and following up on it, thereby making it unnecessary to bring suit. Indeed, Wellcraft suggested Rivera Crespo's attorney to provide certain information concerning the accident without court intervention.[11] Under these circumstances, the Court concludes that Wellcraft is now estopped from raising time bar as a defense. See Velilla v. Pueblo Supermarkets, Inc., 111 P.R. Dec. 585 (1981); Oxford Shipping Co., Ltd. v. New Hampshire Trading Corp., 697 F.2d1, 4 (1982).

**Conclusion**

For the foregoing reasons, Wellcraft's motion for partial summary judgment (**Docket # 26**) is hereby **DENIED**. In light of today's ruling, counterclaimants are hereby **ORDERED** to amend their counterclaim and properly plead their case within **twenty (20) days** from the entry date of this order.

---

[8] See Letter from Marcia M. Kull, Assistant General Counsel-Litigation, Genmar Holdings, Inc. to Benjamín Acosta, Jr., Esq. (Mar. 5, 1997).

[9] See Letter from Marcia M. Kull, Assistant General Counsel-Litigation, Genmar Holdings, Inc. to Benjamín Acosta, Jr., Esq. (March 14, 1997).

[10] See Letter from Marcia M. Kull, Assistant General Counsel-Litigation, Genmar Holdings, Inc. to Ms. María Victoria Munera-Pascual (April 8, 1997).

[11] See Letter from Marcia M. Kull, Assistant General Counsel-Litigation, Genmar Holdings, Inc. to Benjamín Acosta, Jr., Esq. (March 14, 1997) ("Also, I would appreciate additional information regarding the incident. This information would include, but not be limited to, official accident reports, identification of witnesses, witness statements, weather reports, etc. Sharing this information, which is discoverable in litigation, now will allow us to promptly evaluate your client's claim in a manner which is cost-effective for both of us.").

**SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2000.

SALVADOR E. CASELLAS
United States District Judge